UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

GERALD SORRENTINO,       :

           : 

      Plaintiff,       :     Civil Action No.: 08-CV-287 (RLE)

           :

v.            :

           :     **COMPLAINT AND DEMAND**

SYSKA HENNESSY GROUP, INC.,      :     **FOR JURY TRIAL**

SH GROUP, INC., CRAIG KALLE and     :

RICHARD A. FINCHER,       :

           :

      Defendants.       :

-----------------------------------------------------X

Plaintiff, Gerald Sorrentino, by and through his attorneys, The Salvo Law Firm, P.C., as and for his complaint against defendants Syska Hennessy Group, Inc., SH Group, Inc., Craig Kalle and Richard A. Fincher (collectively, Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action against his former employer, Syska Hennessy Group, Inc./SH Group, Inc. (collectively, "Syska") its managing director, Craig Kalle ("Kalle"), and its Senior Vice-President of Human Resources, Richard A. Fincher ("Fincher"), for violations of the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Family Medical Leave Act of 1993, as amended ("FMLA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

2.     Plaintiff was unlawfully demoted and then terminated due to his disability, perceived disability, age, and in retaliation for exercise of his rights pursuant to the FMLA, ADA, ADEA, NYSHRL and NYCHRL.

## PARTIES

3.     Plaintiff Gerald Sorrentino is an individual who resides in Manalapan, New Jersey and was an employee of Syska for over 25 years when he was terminated on or about May 1, 2007. At the time of his termination, Mr. Sorrentino was 55 years old.

4.     At all times relevant to the Complaint, Plaintiff was a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8) of the ADA, was "regarded as having a disability" by Defendants within the meaning of 42 U.S.C. § 12111(8) of the ADA, and has suffered from a "disability" within the meaning of Section 292(21) of the NYSHRL and Section 8-102(16) of the NYCHRL.

5.     At all times relevant herein, Plaintiff has been an FMLA "eligible employee" within the meaning of 29 U.S.C. § 2611(2)(A) of the FMLA because Plaintiff worked more than twelve hundred and fifty (1250) hours in the calendar year preceding his request for FMLA leave.

6.     At all times relevant herein, Plaintiff suffered from a "serious health condition" within the meaning of 29 U.S.C. § 2611(11) of the FMLA.

7.     Defendant Syska Hennessy Group, Inc., upon information and belief, is a consulting, engineering and construction firm with a New York office located at 11 West 42 Street, New York, New York.

8.     Defendant SH Group, Inc., upon information and belief, is the parent company of defendant Syska.

9.     Upon information and belief, at all times relevant herein, Syska has employed more than fifty (50) employees.

10.    Defendant Craig Kalle ("Kalle"), upon information and belief, is an individual who resides in the State of New York, and is the Managing Director of Syska's New York office.

11.    Defendant Richard A. Fincher ("Fincher"), upon information and belief, is an individual who resides in the State of New Jersey, and is the Senior Vice-President of Human Resources for Syska.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1343.

13.    This Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

14.    This Court has jurisdiction over all state law claims pursuant to 28 U.S.C. § 1332.

15.    Venue is based upon 28 U.S.C. §§ 1391 because a substantial part of the events and/or omissions giving rise to this action occurred within this district.

16.    Plaintiff timely filed a charge of discrimination/retaliation with the Equal Employment Opportunity Commission ("EEOC") on or about July 7, 2007, a true and correct copy of which is annexed hereto as Exhibit A.

17.    Plaintiff has satisfied all jurisdictional prerequisites for filing this action by receiving from the EEOC a Notice of Right to Sue (the "Notice"), dated December 6, 2007. Attached hereto as Exhibit B is a true and correct copy of the Notice.

18.    The instant action was commenced less than ninety (90) days after the Plaintiff's receipt of the Notice.

## ALLEGATIONS COMMON TO ALL CLAIMS

19.    Plaintiff Gerald Sorrentino began working at Syska in 1982 as the Assistant Plan Desk Supervisor. In or about 1986, he became the Plan Desk Supervisor and worked for many years in that capacity. In or about July 2004, he was promoted to the position of Manager of Office Services and was given his own office.

20.    In or about May 2006, Mr. Sorrentino learned that he had prostrate cancer. His oncologist, Dr. Brian Chon, told him that he would need to receive daily (Monday-Friday) radiation treatments for a period of approximately three months, and that he thus would need to request a medical leave of absence. Mr. Sorrentino applied for, and was granted, leave pursuant to the FMLA.

21.    Beginning in or about August 2006, Mr. Sorrentino began his medical leave of absence. The daily cancer treatments left him very weak and debilitated, however, he gladly accepted the telephone calls he received from his colleagues on practically a daily basis seeking advice and guidance on various aspects of running the office/plan desk.

22.    Mr. Sorrentino returned to work on or about November 15, 2006. His cancer, as well as the treatment he had received, significantly impacted various activities of daily living. For example, his radiation treatments exacerbated Mr. Sorrentino's arthritis in his knees and legs, greatly impairing his perambulation. Indeed, Plaintiff was limping when he returned to work. Mr. Sorrentino's prostate cancer had also left him impotent, and with urinary incontinence issues. Despite these limitations, Plaintiff was fully able to perform the essential functions of his job.

23.    In or about January 30, 2007, Mr. Sorrentino received a performance review from Syska (the "Review"), consisting entirely of "competent" and "above average" ratings. The

Review stated that he had done "an excellent job since returning in November [2006] from disability leave in organizing the processing of bills, ordering, etc. from our various vendors." The Review further stated that he had "instituted savings in various areas that continue to save money or make a profit for the firm," and that he had "strong organizational and planning abilities" and remained "an asset to the firm." Attached hereto as Exhibit C is a true and correct copy of the Review.

24.    Despite this glowing Review, and his 25+ years of exemplary service to Syska, Mr. Sorrentino was unceremoniously informed, in or about February 2007, that he was being replaced in his position as Manager of Office Services and effectively "demoted" back to the Plan Desk. Mr. Sorrentino learned that a woman, Katherine Eng, had been hired to replace him and would now be his "boss." Ms. Eng was significantly younger than Mr. Sorrentino and was not disabled.

25.    Mr. Sorrentino was very emotionally distraught upon learning of his demotion and he asked defendant Kalle, on or about February 6, 2007, why Syska was demoting him despite his many years of loyal and exemplary service and the terrific performance review he had recently received.   Kalle told Mr. Sorrentino that he had been replaced by Katherine Eng because Mr. Sorrentino "had cancer" and the cancer could "come back" at any time, and, thus, Syska could "no longer depend" on him.

26.    Mr. Sorrentino was devastated by Kalle's insensitive and discriminatory words. The next day, on or about February 7, 2007, Mr. Sorrentino sent an e-mail to Kalle informing him that it was "bad enough that I have to train my new boss and be relegated to the plan desk. But when you told me one of the reasons for this was if my cancer comes back or if [I] get a

relapse, I may never come back again, it hurt me very much. I live with that fear every day and I didn't need to be reminded by my boss."

27.    About an hour later, Kalle responded to Mr. Sorrentino's e-mail as follows: *"Obviously Jerry there was no intent on my part to be callous to your situation."* With that e-mail, Kalle confirmed what Mr. Sorrentino already strongly suspected -- that Syska had, indeed, demoted and replaced him because of real and perceived disabilities relating to his cancer and cancer treatment. Attached hereto as Exhibit D is a true and correct copy of the e-mail exchange at issue.

28.    Shortly thereafter, Mr. Sorrentino went for a follow-up visit to his oncologist, Dr. Chon. He told Dr. Chon that he was greatly distressed at having been demoted because he had cancer, and was very fearful that Kalle's words would prove to be true; that is, that his cancer would come back someday and he would be so sick that he would be unable to work. Dr. Chon informed Mr. Sorrentino, in no uncertain terms, that all of the stress, worry and humiliation could adversely affect his recovery. Dr. Chon ordered Mr. Sorrentino to take an additional ten weeks off to aid in his recuperation, and informed him that he could expect to return to work on May 1, 2007.

29.    Mr. Sorrentino informed Syska of his doctor's order, and Syska agreed to allow Mr. Sorrentino further medical leave pursuant to FMLA. Mr. Sorrentino informed Syska that he would return to work on May 1, 2007.

30.    During Mr. Sorrentino's leave, he tried to concentrate on the positive, and was hopeful that perhaps things would be better when he returned to Syska. Indeed, Mr. Sorrentino received so many telephone calls from his co-workers stating that Ms. Eng was incompetent that

6

Mr. Sorrentino was hopeful that Syska would realize that it had made a mistake by demoting him.

31.    On May 1, 2007, Mr. Sorrentino returned to work as promised. When he arrived that morning, he was informed by Senior Vice President of Human Resources, Richard A. Fincher, that he had been terminated. Plaintiff was stunned. When he asked why he had been terminated, Fincher vaguely responded that he "no longer fit in with Syska's plans." This "excuse" is pretextual as Mr. Sorrentino was clearly terminated because of his real and perceived disabilities, his age, and in retaliation for his having taken FMLA leaves.

32.    Fincher told Mr. Sorrentino that Syska was aware that he had hired a "woman attorney" to institute a discrimination claim against Syska, but that Syska had "very strong attorneys" and Mr. Sorrentino would "never win." Fincher then presented Mr. Sorrentino with an offer of a severance package consisting of $29,348.00, plus three additional months of paid COBRA (the "Severance Package"), provided he immediately sign a General Release of any and all claims that he had, or that he may have had, against Syska. Fincher told Mr. Sorrentino that if he did not sign the Release immediately, the offer would be withdrawn and he would "never get a penny" out of Syska.

33.    Fincher's conduct evidenced a retaliatory motive on the part of Syska when -- after Syska learned that Mr. Sorrentino had hired a "woman attorney" to institute a discrimination claim against Syska -- Fincher, acting in his capacity as Syska's Senior Vice President of Human Resources, tried to force Mr. Sorrentino to execute a General Release through intimidation and without affording him any time to consider its terms.

34.    Mr. Sorrentino rejected Syska's proffered Severance Package, and refused to sign the General Release.

35.    Mr. Sorrentino immediately applied for Unemployment Benefits, but a "hold" was initially placed on his receiving any benefits by the New York State Department of Labor ("Department of Labor"). According to the notice letter sent to him by the Department of Labor, Syska had apparently indicated to them that he had been discharged from his job "for reasons other than lack of work," thus making him ineligible for Unemployment. The false statements made by Syska to the Department of Labor further evidenced a retaliatory motive in connection to Mr. Sorrentino's refusal to sign the General Release, and its knowledge that Plaintiff had hired a "woman attorney" to represent his rights.

## COUNT ONE
### (ADA: DISABILITY DISCRIMINATION)

36.    Plaintiff repeats and realleges paragraphs 1 through 35 above as if fully set forth herein.

37.    The aforesaid conduct of the Defendants constitutes willful disability-based discrimination against Plaintiff in violation of the ADA.

38    As a result of the unlawful discrimination by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, and substantial loss of future earnings.

39.    In addition, as a result of the willful and unlawful discrimination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

40.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

41.    In addition, Plaintiff is entitled to punitive damages due to the egregious violations committed by Defendants.

## COUNT TWO
### (NYSHRL: DISABILITY DISCRIMINATION)

42.    Plaintiff repeats and realleges paragraphs 1 through 41 above as if fully set forth herein.

43.    The aforesaid conduct of the Defendants constitutes willful disability-based discrimination against Plaintiff in violation of NYSHRL.

44.    As a result of the unlawful discrimination by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

45.    In addition, as a result of the willful and unlawful discrimination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

46.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

## COUNT THREE
### (NYCHRL: DISABILITY DISCRIMINATION )

47.    Plaintiff repeats and realleges paragraphs 1 through 46 above as if fully set forth herein.

48.    The aforesaid conduct of the Defendants constitutes willful disability-based discrimination against Plaintiff in violation of the NYCHRL.

49.    As a result of the unlawful termination by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

50.    In addition, as a result of the willful and unlawful discrimination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

51.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

52.    In addition, Plaintiff is entitled to punitive damages due to the egregious violations committed by Defendants.

## COUNT FOUR
### (ADEA: AGE DISCRIMINATION)

53.    Plaintiff repeats and realleges paragraphs 1 through 52 above as if fully set forth herein.

54.    The aforesaid conduct of the Defendants constitutes willful age-based discrimination against Plaintiff in violation of the ADEA.

55.    As a result of the unlawful age-based discrimination by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

56.    In addition, as a result of the willful and unlawful age-based discrimination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

57.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

58.    In addition, Plaintiff is entitled to liquidated damages due to the egregious violations committed by Defendants.

10

## COUNT FIVE
### (NYSHRL: AGE DISCRIMINATION)

59.     Plaintiff repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.     The aforesaid conduct of the Defendants constitutes willful age discrimination against Plaintiff in violation of the New York State Human Rights Law.

61.     As a result of the unlawful age-based discrimination by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

62.     In addition, as a result of the willful and unlawful age-based discrimination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

63.     As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

## COUNT SIX
### (NYCHRL: AGE DISCRIMINATION)

64.     Plaintiff repeats and realleges paragraphs 1 through 63 above as if fully set forth herein.

65.     The aforesaid conduct of the Defendants constitutes willful age discrimination against Plaintiff in violation of the New York City Human Rights Law.

66.     As a result of the unlawful age-based discrimination by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

67.    In addition, as a result of the willful and unlawful age-based discrimination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

68.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

69.    In addition, Plaintiff is entitled to punitive damages due to the egregious violations committed by Defendants.

COUNT SEVEN
(FMLA: RETALIATORY TERMINATION)

70.    Plaintiff repeats and realleges paragraphs 1 through 69 above as if fully set forth herein.

71.    Defendants terminated Plaintiff's employment for exercising his rights under the FMLA in violation of 29 U.S.C. §2615(a)(2).

72.    The aforesaid conduct of the Defendants was in conscious disregard of Plaintiff's rights.

73.    As a result of the unlawful behavior by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

74.    In addition, as a result of the willful and unlawful discrimination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

75.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

## COUNT EIGHT
### (ADA: RETALIATORY TERMINATION)

76.    Plaintiff repeats and realleges paragraphs 1 through 75 above as if fully set forth herein.

77.    Defendants terminated Plaintiff's employment in retaliation for his intention to bring a discrimination claim against Syska.

78.    The aforesaid conduct of the Defendants was in conscious disregard of Plaintiff's rights.

79.    As a result of the unlawful behavior by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

80.    In addition, as a result of the willful and unlawful retaliatory termination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

81.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

82.    In addition, Plaintiff is entitled to punitive damages due to the egregious violations committed by Defendants.

## COUNT NINE
### (ADEA: RETALIATORY TERMINATION)

83.    Plaintiff repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.    Defendants terminated Plaintiff's employment in retaliation for his intention to bring a discrimination claim against Syska.

85.    The aforesaid conduct of the Defendants was in conscious disregard of Plaintiff's rights.

86.    As a result of the unlawful behavior by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

87.    In addition, as a result of the willful and unlawful retaliatory termination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

88.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

## COUNT TEN
### (NYSHRL: RETALIATORY TERMINATION)

89.    Plaintiff repeats and realleges paragraphs 1 through 88 above as if fully set forth herein.

90.    Defendants terminated Plaintiff's employment in retaliation for his intention to bring a discrimination claim against Syska and for lawfully exercising his rights pursuant to the FLMA.

91.    The aforesaid conduct of the Defendants was in conscious disregard of Plaintiff's rights.

92.    As a result of the unlawful behavior by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

93.    In addition, as a result of the willful and unlawful retaliatory termination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

94.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

**COUNT ELEVEN**
**(NYCHRL: RETALIATORY TERMINATION)**

95.    Plaintiff repeats and realleges paragraphs 1 through 94 above as if fully set forth herein.

96.    Defendants terminated Plaintiff's employment in retaliation for his intention to bring a discrimination claim against Syska and for lawfully exercising his rights pursuant to the FLMA.

97.    The aforesaid conduct of the Defendants was in conscious disregard of Plaintiff's rights.

98.    As a result of the unlawful behavior by Defendants, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

99.    In addition, as a result of the willful and unlawful retaliatory termination by Defendants, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

100.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

101.    In addition, Plaintiff is entitled to punitive damages due to the egregious violations committed by Defendants.

## COUNT TWELVE
## NYSHRL:  AIDING AND ABETTING DISCRIMINATION AND RETALIATION
### (Kalle and Fincher)

102.    Plaintiff repeats and realleges paragraphs 1 through 101 above as if fully set forth herein.

103.    By their aforementioned conduct, defendants Kalle and Fincher aiding and abetted Syska's unlawful discrimination and retaliation.

104.    As a result of the unlawful aiding and abetting by Kalle and Fincher, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

105.    In addition, as a result of the willful and unlawful aiding and abetting discrimination and retaliation by Kalle and Fincher, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

106.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

## COUNT THIRTEEN
## NYCHRL:  AIDING AND ABETTING DISCRIMINATION AND RETALIATION
### (Kalle and Fincher)

107.    Plaintiff repeats and realleges paragraphs 1 through 106 above as if fully set forth herein.

108.    By their aforementioned conduct, defendants Kalle and Fincher aiding and abetted Syska's unlawful discrimination and retaliation.

16

109.    As a result of the unlawful aiding and abetting by Kalle and Fincher, Plaintiff has suffered substantial monetary damages, including, but not limited to, loss of pay and other employment benefits, substantial loss of future earnings.

110.    In addition, as a result of the willful and unlawful aiding and abetting discrimination and retaliation by Kalle and Fincher, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish and severe humiliation.

111.    As a result of the foregoing, Plaintiff is entitled to backpay with interest, front pay and compensatory damages, in an amount to be proven at trial, exceeding one million dollars.

112.    In addition, Plaintiff is entitled to punitive damages due to the egregious violations committed by Kalle and Fincher.

WHEREFORE, it is respectfully requested that the Court enter judgment against Defendants:

A.    Awarding to Plaintiff on his first claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, punitive damages, interest, costs and attorneys' fees;

B.    Awarding to Plaintiff on his second claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, interest, costs and attorneys' fees.

C.    Awarding to Plaintiff on his third claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, punitive damages, interest, costs and attorneys' fees;

D.    Awarding Plaintiff on his fourth claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, liquidated damages, interest, costs and attorneys' fees;

E.    Awarding Plaintiff on his fifth claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, interest, costs and attorneys' fees;

F.    Awarding Plaintiff on his sixth claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, punitive damages, interest, costs and attorneys' fees;

G.    Awarding Plaintiff on his seventh claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, liquidated damages, interest, costs and attorneys' fees;

H.    Awarding Plaintiff on his eighth claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, punitive damages, interest, costs and attorneys' fees;

I.    Awarding Plaintiff on his ninth claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, liquidated damages, interest, costs and attorneys' fees;

J.    Awarding Plaintiff on his tenth claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, liquidated damages, interest, costs and attorneys' fees;

K.    Awarding Plaintiff on his eleventh claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, punitive damages, interest, costs and attorneys' fees;

L.    Awarding Plaintiff on his twelfth claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, liquidated damages, interest, costs and attorneys' fees;

M.    Awarding Plaintiff on his seventh claim for relief, backpay with interest, front pay, compensatory damages in an amount to be determined at trial, punitive damages, interest, costs and attorneys' fees;

N.    Awarding Plaintiff such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Gerald Sorrentino hereby demands a trial by jury on all issues so triable.

Dated:    January 4, 2008

THE SALVO LAW FIRM, PC

By: _____
     CINDY D. SALVO

303 South Broadway, Suite 222
Tarrytown, New York  10591
(914) 366-7466

Attorneys for Plaintiff

19

# EXHIBIT A

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|

This form is affected by the Privacy Act of 1974; See Privacy act statement before completing this form.

New York State Division of Human Rights,
New York City Commission on Human Rights and EEOC
State or local Agency, if any

AGENCY: [ ] FEPA  [X] EEOC

CHARGE NUMBER: 520-2007-03665

NAME (Indicate Mr., Ms., Mrs.)
Mr. Gerald Sorrentino

STREET ADDRESS
19 Forest Drive

CITY, STATE AND ZIP CODE
Manalapan, NJ 07726

HOME TELEPHONE (Include Area Code)
732-446-5897

DATE OF BIRTH
August 8, 1951

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

NAME
Syska Hennessy Group

NUMBER OF EMPLOYEES, MEMBERS
500+

TELEPHONE (Include Area Code)
212-921-2300

STREET ADDRESS
11 West 42 Street

CITY, STATE AND ZIP CODE
New York, NY 10036

COUNTY
New York

NAMES
Craig Kalie
Richard Fincher
Harvey Goldman

NUMBER OF EMPLOYEES, MEMBERS:
n/a

TELEPHONE (Include Area Code)
212-921-2300

STREET ADDRESS
c/o Syska Hennessy, 11 W. 42 Street

CITY, STATE AND ZIP CODE
New York, NY 10036

COUNTY
New York

CAUSE OF DISCRIMINATION BASED ON:
[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [X] AGE  [X] DISABILITY  [ ] OTHER Pregnancy Act

EARLIEST (ADEA/EPA): November 2006
LATEST (ALL): May 2007
[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s))

I am a 55-year-old cancer survivor. I was employed by Syska Hennessy Group, Inc. ("Syska") for over 25 years, and I was an exemplary employee. I was demoted and wrongfully terminated from my position as a result of real and perceived disabilities related to my prostate cancer and treatment, my age, and in retaliation for my complaints of discrimination. I believe that Syska has violated, at a minimum, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the New York State Human Rights Law and the New York City Human Rights Law. See my Affidavit, attached hereto as Exhibit 1.

[X] I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone Number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date 1/7/7  Charging Party: _____

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Sworn to and subscribed before me this day of _____ 200_

My commission expires: 12, 29, 2008

## AFFIDAVIT OF GERALD SORRENTINO REGARDING
## CHARGES OF DISABILITY DISCRIMINATION,
## AGE DISCRIMINATION AND RETALIATION

STATE OF NEW JERSEY      )
                         ) ss.:
COUNTY OF MONMOUTH )

GERALD SORRENTINO, being duly sworn, deposes and says:

I was employed by Syska Hennessy Group, Inc. ("Syska") for over 25 years. I am filing this claim in connection with my termination from Syska. I have been informed by my counsel that Syska has violated, at a minimum, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the New York State Human Rights Law and the New York City Human Rights Law by, *inter alia*, unlawfully demoting and then wrongfully terminating me as a result of real and perceived disabilities related to my prostate cancer and treatment, my age (55 years old), and in retaliation for my complaints of discrimination.

I began my career at Syska in 1982 as the Assistant Plan Desk Supervisor. I then became the Plan Desk Supervisor and worked for many years in that capacity. In or about 2004 I was promoted to the position of Manager of Office Services. I did very well in this position, and received a great deal of praise for my efforts.

In or about May 2006, I learned that I had prostrate cancer. My oncologist, Dr. Brian Chon, told me that I would need to receive daily (Monday-Friday) radiation treatments for a period of approximately three months, and that I would need to request a medical leave of absence.

Beginning in or about August 2006, I began my medical leave of absence. The daily cancer treatments left me very weak and debilitated, however, I gladly accepted the telephone calls I received from my colleagues on practically a daily basis seeking advice and guidance on various aspects of running the office/plan desk.

I returned to work in November 2006 on a full-time basis. I was limping when I returned because the arthritis in my knees and legs had been greatly exacerbated by the radiation treatments. Despite these limitations, however, I was fully able to perform the essential functions of my job.

In or about January 30, 2007, I received a stellar performance review from Syska (the "Review"), consisting entirely of "competent" and "above average" ratings. The Review stated that I had done "an excellent job since returning in November from disability leave in organizing the processing of bills, ordering, etc. from our various vendors." The Review further stated that I had "instituted savings in various areas that continue to save money or make a profit for the firm," and that I had "strong organizational and planning abilities" and remained "an asset to the firm."

Despite this glowing Review, I was informed that I was being replaced in my position as Manager of Office Services and effectively "demoted" back to the Plan Desk. When I asked the Managing Director of Syska, Craig Kalle, why Syska was demoting me despite my many years of loyal and exemplary service, Mr. Kalle told me that because I "had cancer" and the cancer could "come back" at any time, the company could "no longer depend" on me.

I was truly devastated by this assessment from my employer. Indeed, I was so distraught that I sent an e-mail to Mr. Kalle the next day stating that "[i]t's bad

2

enough that I have to train my new boss and be relegated to the plan desk. But when you told me one of the reasons for this was if my cancer comes back or if [I] get a relapse, I may never come back again, it hurt me very much. I live with that fear every day and I didn't need to be reminded by my boss."

Mr. Kalle responded to my e-mail with a return e-mail stating as follows: "Obviously Jerry there was no intent on my part to be callous to your situation." With that e-mail, Mr. Kalle confirmed that Syska had, indeed, demoted and replaced me because of real and perceived disabilities relating to my cancer and cancer treatment. Attached hereto as Exhibit A is a true and correct copy of the e-mail that I sent Mr. Kalle, and his return e-mail to me.

I was so distressed by my demotion, and the reason behind the demotion, that I went to see my oncologist, Dr. Chon, who informed me, in no uncertain terms, that all of the stress, worry and humiliation could adversely affect my recovery. He ordered me to take another ten weeks off to aid my recuperation, and informed me that I could return to work on May 1, 2007.

I informed Syska of my doctor's order, and Syska agreed to the leave. I informed Syska that I would return to work on May 1, 2007.

On May 1, 2007, I returned to work as promised. When I arrived that morning, I was informed by Senior Vice President of Human Resources, Richard Fincher, that I had been terminated. When I asked why I had been terminated, Mr. Fincher vaguely responded that I "no longer fit in with Syska's plans." Mr. Fincher also told me that the company was aware that I had hired a "woman attorney" to institute a discrimination claim against Syska, but that Syska had "very strong attorneys" and I

3

would "never win." He then presented me with an offer of a severance package consisting of $29,348.00, plus three additional months of paid COBRA (the "Severance Package"), provided I immediately sign a General Release of any and all claims I had, or may have had, against Syska. Mr. Fincher told me that if I did not sign the Release immediately, the offer would be withdrawn and I would "never get a penny more" out of Syska.

I rejected Syska's proffered Severance Package, and refused to sign the General Release.

I immediately applied for Unemployment Benefits, but a "hold" was placed on my receiving any benefits by the New York State Department of Labor ("Department of Labor"). According to the notice letter sent to me by the Department of Labor, Syska had apparently indicated to them that I had "been discharged from [my job for reasons other than lack of work," thus making me ineligible for Unemployment. The investigation by the Department of Labor is, at the present time, ongoing. I am uncertain just what information, or misinformation, Syska gave the Department of Labor in connection with my termination.

_____
GERALD SORRENTINO

Sworn to and subscribed before
me this _9th_ day of July 2007

_____
Notary Public

KAAREN SENA
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 12/20/2009

4

# **EXHIBIT B**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

Spencer H. Lewis, Jr.
District Director

## Certification of Early Notice of Right to Sue

Gerald Sorrentino
19 Forest Drive
Manalapan, NJ 07726

RE:   *Gerald Sorrentino v. Syska Hennessy Group, Inc.*
      *EEOC Charge No. : 520-2007-03655*

Dear Mr. Sorrentino:

The U. S. Equal Employment Opportunity Commission ("EEOC" or "Commission") is in receipt of your request for a *Notice of Right to Sue* regarding the above referenced Charge of Discrimination ("Charge").

Ordinarily a Charging Party is not entitled to receive a *Notice of Right to Sue* upon request until the Charge has been pending with the EEOC for at least 180 days. However, an early *Notice of Right to Sue* is authorized by 29 C.F.R. § 1601.28(a)(2) if the Director determines that it is probable that the Commission will be unable to complete its administrative process within 180 days of when the Charge was filed.

The Commission has reviewed the information/documents contained in the Charge and in Syska Hennessy Group, Inc.'s response to your Charge. Based on the Commission's current workload and the extent of investigation required to complete this investigation, we conclude that the Commission will be unable to complete this investigation within the next 180 days. Therefore, in accordance with the Commission's Priority Charge Processing Procedures, the EEOC has determined that it is appropriate to issue a *Notice of Right to Sue* to you at this time.

No further investigation or action will be taken by the Commission in regards to this Charge. Enclosed is your *Notice of Right to Sue*. If you wish to pursue this Charge on your own, you may file a lawsuit in Federal District Court using the *Notice of Rights to Sue*, within **90 days** of your receipt of it.

Sincerely,

Spencer H. Lewis, Jr.
District Director

DEC 06 2007
Date

CC: Respondent & Charging Party's Attorney

EEOC Form 161-B (3/98)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Gerald Sorrentino<br>19 Forest Drive<br>Manalapan, NJ 07726 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No.<br><br>520-2007-03655 | EEOC Representative<br>Patrick A. Sanford,<br>Federal Investigator | Telephone No.<br><br>(212) 336-3677 |
|---|---|---|

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to** your case:

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN</u> <u>90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Spencer H. Lewis, Jr.*

Spencer H. Lewis, Jr.,
Director

DEC 06 2007

*(Date Mailed)*

Enclosures(s)

cc:

| Respondent:<br><br>SYSKA HENNESSY GROUP<br>Director Of Personnel<br>11 West 42nd Street<br>New York, NY 10036 | Respondent's Attorney:<br><br>Bond, Scjpemeck & King, PL<br>Attn: Michael Bernstein, Esq.<br>330 Madison Avenue<br>New York, NY 10017-5001 | Charging Party's Attorney:<br><br>Cindy D. Salvo, Esq.<br>101 Eisenhower Parkway, Suite 300<br>Roseland, NJ 07068 |
|---|---|---|

# **<u>EXHIBIT C</u>**



SYSKA HENNESSY
GROUP

## *Supervisor Performance Evaluation*

Employee number: 000687

| | | | |
|---|---|---|---|
| Employee being Appraised: | GERALD SORRENTINO | Date: | Jan 30, 2007 |
| Job Title: | OFFICE SUPERVISOR | Department: | N0 |
| Location: | NY | Grade: | 14X |
| FLSA Status: | X | | |

*If you are a supervisor with a team member who has been working on multiple projects with multiple reviewers, please collect the necessary feedback from all other supervisors prior to providing feedback on this form.*

## PERFORMANCE EVALUATION DEFINITIONS

**0. Not Applicable**
Employee is not required to demonstrate competency in current position. This rating will not average into total rating applicable to position.

**1. Not Demonstrated**
Employee does not demonstrate competency. Developmental plan needs to be established in order to provide platforms for demonstrating the competency.

**2. Needs Development**
Employee needs to develop competency for continued success. Competency is a requirement in the current position in order to progress to the next level

**3. Competent**
Employee demonstrates competency at a level that consistently meets and sometimes exceeds the job expectations.

**4. Above Average**
Employee demonstrates competency that is consistently above what would be expected for employees at this level.

**5. Expert**
Employee demonstrates competency that is always superior to the job expectations. He/she is considered exceptional among his/her peers.

*Please evaluate on the competencies and skills below;*

**Occupational/Technical Knowledge**
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ○ | ◉ | ○ |

This area covers the employee's knowledge of his/her functions and responsibilities. It includes both knowledge that immediately impacts work functions and general knowledge of the field. Does the employee know his/her function impacts other functions? Syska Hennessy Group firm-wide goals? Is he/she considered an expert in his/her field or does he/she require a lot of help from others?

**Planning**
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ○ | ◉ | ○ |

Does the employee realistically anticipate work and what resources will be needed to accomplish it? Is this done appropriately in advance? Does the employee make effective backup plans? Can the employee adapt to change, identify alternate action plans? Are they consistent with a customer focus?

**Problem Solving**
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ○ | ◉ | ○ |

This area covers the employee's effectiveness at defining an issue, diagnosing a problem and analyzing causes, recommending and implementing solutions. Does the employee's cause analysis include reading materials, using outside sources or internal groups and/or individuals to increase understanding and to develop sound solutions? Is the employee an effective problem solver? Does he/she regularly exercise sound judgment?

**Organizing**
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ○ | ◉ | ○ |

This area covers the determining, and arranging of resources (staff, material, time, and facilities to accomplish objectives). Is the employee effective in establishing and, if needed, rethinking priorities?

**Decision Making**

Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ⊙ | ○ | ○ |

Does the employee make decisions and recommendations or does he/she tend to shy away from making them? Does the employee attempt to get you or others to make his/her decisions? Does the employee make decisions without getting input from you or others who have a stake in the decision? Does the employee analyze and consider alternatives? Does the employee show originality in his/her decisions?

**Self-Management Skills**

Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ⊙ | ○ | ○ |

Does the employee consistently demonstrate adaptability and flexibility in the job without losing effective control? Does the employee remain effective and display self-confidence in dealing with difficult situations and take corrective action, as required? Does the employee require supervision?

**Results**

Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ○ | ⊙ | ○ |

This factor involves the execution of plans and programs to achieve desired results. The emphasis is on the ability to work effectively, both individually and in groups; the taking of responsibility and initiatives; the handling of new situations; and the meeting of established deadlines and objectives.

**Communicating**

Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ⊙ | ○ | ○ |

This factor deals with the skills of communicating effectively in the interest of good results. Does he/she keep supervisors, associates, and subordinates fully informed about work progress, problems, and with adequate feedback on the actual work? Does the employee communicate well orally? Is he/she effective in participating in groups? Does he/she listen well? Foster open communication? Does the individual communicate well in writing?

Fiscal Management
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ○ | ◉ | ○ |

This factor deals with the development of the unit/department's annual budget; timely recording of financial information; filing and monitoring of appropriate expense forms; maintaining fiscal records for audit and review; and adherence to financial and accounting principals in the performance of the individual's job.

Recruiting/Retention
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 6 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ◉ | ○ | ○ |

Is the individual responsible for recruiting within their group? If so, do they manage the process effectively? Are they aware of morale issues and what have they done to address those issues? Does the individual utilize the Human Resources department effectively in the talent management process?

Cross-Selling
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ◉ | ○ | ○ | ○ | ○ | ○ |

Cross-selling is designed to widen the client's reliance on Syska Hennessy Group and decrease the likelihood of the client switching to our competitor. Is the employee involved in selling the breadth of Syska Hennessy Group's services to current clients? What cross selling has the employee accomplished during the year?

Project Management
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ◉ | ○ | ○ | ○ | ○ | ○ |

This factor refers to the ability of an individual to develop project plans effectively. Can the employee coordinate projects? Does the employee communicate changes and progress? Does the employee complete projects on time and under budget? How does the employee manage project team activities?

Interpersonal Skills and Relationships
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ⊙ | ○ | ○ |

This factor refers to the ability of the employee to establish and maintain effective contacts within or outside Syska Hennessy Group in order to establish goodwill, conduct negotiations, render services, etc. Does the employee manage conflict? Does the employee value diverse work-styles, approaches, and thoughts? Does the employee treat others with respect and fairness? Cite specific instances of favorable or unfavorable relationships.

Leadership
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ⊙ | ○ | ○ |

This area covers the ability to of the employee to reach goals through the effort of others. It is important to achieve results through the work of others that surround the individual in the organization, i.e., subordinates, associates, and superiors, through items such as: Does the employee encourage others to assume responsibility? What has the employee done to develop his/her subordinates? Does he/she promote/enforce safety and quality issues? Does the employee foster teamwork? Is he/she active in coaching and developing others?

Coaching /Mentoring
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ⊙ | ○ | ○ |

This area covers the ability to reach goals through the development of others. Does the employee encourage others to learn and understand the functions and roles of Syska Hennessy Group? Does the employee give extra attention to training through coaching and/or mentoring? Do members of the employees' team think of him/her as a good model, coach, or mentor?

Delegating
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ○ | ⊙ | ○ |

This area covers the ability of the employee to establish and maintain effective Delegates work assignments. Does the employee match the responsibility to the person? Does the employee give authority and trust to their employees to work independently? Does the employee set expectations and monitor delegated activities? Does the employee provide recognition for results?

Ability to Assess Staff Performance
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ○ | ○ | ○ | ⊙ | ○ | ○ |

This factor refers to the ability of the employee to define responsibilities and objectives. Does the employee set goals and objectives with the individuals in their team? Does the employee give effective performance feedback? Can the employee motivate for increased results? Does the employee recognize contributions? Does the employee encourage training and development of their staff?

Vision/Strategy Orientation
Rating:

| Not Applicable 0 | Not Demonstrated 1 | Needs Development 2 | Competent 3 | Above Average 4 | Expert 5 |
|---|---|---|---|---|---|
| ⊙ | ○ | ○ | ○ | ○ | ○ |

This factor refers to the ability of an individual to develop strategy and vision to achieve Syska Hennessy Group goals. Does the employee inspire others to achieve Syska Hennessy Group's vision and goals? Does the employee display passion and optimism? Does the employee understand Syska's strengths and weaknesses? Does the employee adapt the strategy and goals to changing conditions? Does the employee communicate Syska Hennessy Group goals and vision, and gain commitment?

## Summary of Ratings

| | |
|---|---|
| Occupational/Technical Knowledge | 4 |
| Planning | 4 |
| Problem Solving | 4 |
| Organizing | 4 |
| Decision Making | 3 |
| Self-Management Skills | 3 |
| Results | 4 |
| Communicating | 3 |
| Fiscal Management | 4 |
| Recruiting/Retention | 3 |
| Cross Selling | 0 |
| Project Management | 0 |
| Interpersonal Skills & Relationships | 3 |
| Leadership | 3 |
| Coaching/Mentoring | 3 |
| Delegating | 4 |
| Ability to Assess Performance | 3 |
| Vision/ Strategy Orientation | 0 |
| Overall Performance Rating | 3.47 |

## Summary of Performance

Use this section to assess the employee's total performance. Identify progress and determinants of the employee's Goals (from the Goal-Setting form). Are the goals set by the employee being met? Why or why not? What are the successes? What have been the obstacles? Also, use the details of the above reviewed competencies  Highlight exceptional items and areas for improvement/training needs. Outline expectations for the coming review period and comment on what additional training and/or experience the employee needs to enhance his/her effectiveness.  Below are the three areas in which to summarize the individual's performance.

Stop – these things that are hindering the effectiveness and performance of the employee.

Start – focusing on these expectations that will help to improve the effectiveness and performance of the employee

Jerry, will tend to be a little too critical at times of the facilities staff and, although points are for the most part valid, as a manager this has to be balanced with positive comments and reinforcement as appropriate.

Expression of his opinions and thoughts relative to issues affecting the facilities operation, his responsibilities, his position, etc. is an area where he can become more proactive.

Continue – to exhibit these strengths that are encouraged and appreciated.

Jerry, has done an excellent job since returning in November from disability leave in organizing the processing of bills, ordering, etc. from our various vendors.  Due to the inexperience of the staff during his disability leave the processing and ordering (supplies, equipment, etc.) had fallen short of the level prior to his disability leave.

Jerry, has instituted savings in various areas that continue to save money or make a profit for the firm.  Jerry's ability to search for and enact savings is one of his strongest points and he should continue these efforts. Areas where savings or profits have been realized are printing, messengers, ups shipping, equipment (printers, faxes, copiers), paying vendors thru corporate credit card, as well as in office upgrades/repairs, office supplies, etc. to name a few.

Jerry's ability to follow through on various tasks simultaneously has been an area where he has improved over the last couple of years thru his strong organizational and planning abilities.  He has improved in his initiative to discuss office services items directly and independently with various managers and staff where they apply and has offered alternates and options that in many cases improved upon the original requests.  This should continue.

Jerry remains an asset to the firm.

# **EXHIBIT D**

Sorrentino, Jerry

From:      Kalle, Craig
Sent:      Wednesday, February 07, 2007 10:14 AM
To:        Sorrentino, Jerry
Subject: RE: review

Obviously Jerry there was no intent on my part to be callous to your situation.

---

From: Sorrentino, Jerry
Sent: Wednesday, February 07, 2007 8:53 AM
To: Kalle, Craig
Subject: review

I want to apologize to you for my rude behavior February 6th. It's bad enough that I have to train my new boss and be relegated to the plan desk. But when you told me one of the reasons for this was if my cancer comes back or if I get a relapse
I may never come back again, it hurt me very much. I live with that fear every day and I didn't need to be reminded by my boss. If you feel that comment was no big deal then the tears you saw  from me were no big deal either. Again I apologize but I feel you should have been more sensitive regarding that issue, but since you have never been through it I guess you wouldn't understand.                                    5

*Jerry Sorrentino*
Facilities Management
Syska Hennessy Group, Inc.



SYSKA HENNESSY
GROUP

11 West 42nd Street
New York, NY 10036
Tel: 212-556-5541
Fax: 212-556-3220
jsorrentino@syska.com
http://www.syska.com